| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------X<br>In re:<br><br>MICHAEL COLETTA,<br><br>　　　　　　　　　　Debtor(s)<br>-------------------------------------------------------------X | Adjourned Return Date: 6/23/2016<br>Time:　　　　　　　10:30 a.m.<br><br><br>Chapter 13<br>Case No.: 08-16-71723-ast |

**AMENDED MOTION OF PE-NC, LLC FOR RELIEF FROM THE AUTOMATIC STAY AND IN REM RELIEF PURSUANT TO 11 U.S.C. §362 (d)(4) AND RELIEF FROM CO-DEBTOR STAY PURSUANT TO 11 U.S.C. §1301(c)**

TO THE HONORABLE ALAN S. TRUST,
UNITED STATES BANKRUPTCY JUDGE:

　　　　　PE-NC, LLC ("PENC" or the "Movant") by and through its counsel, Lawrence and Walsh, P.C. hereby moves for relief from the automatic stay and the co-debtor stay (the "Motion") to permit it to complete the foreclosure sale with respect to the real property located 444 Lakeview Avenue, Rockville Centre, New York 11570 as more fully described herein. In support of the Motion, PENC respectfully represents as follows:

### JURISDICTION

　　　　　1.　　　This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. §157(b).

　　　　　2.　　　Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

　　　　　3.　　　The relief requested in this Motion is predicated upon 11 U.S.C. §§ 362(d), 105 and 1301 (c) and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND

　　　　　4.　　　PENC seeks relief from the automatic stay and the co-debtor stay in order to allow it to proceed with the foreclosure sale of the real property located at 444 Lakeview

Avenue, Rockville Centre, New York 11570 (the "Real Property"). The foreclosure sale of the Real Property had been advertised for April 21, 2016 based upon a Judgment of Foreclosure and Sale that had been entered by the New York State Supreme Court, County of Nassau (the "Supreme Court") on September 1, 2004. PENC is the current holder of the first mortgage on the Real Property and holds a claim in excess of $875,000.00[1].

5. Michael Coletta (the "Debtor") instituted the within chapter 13 case on April 20, 2016 the day before the scheduled foreclosure sale. This is the second Chapter 13 case filed by the Debtor in the last 4 months. The Debtor had filed his prior Chapter 13 case on December 23, 2015, prior to a previously noticed foreclosure sale. As will be addressed in detail below, PENC had sought and obtained relief from the automatic stay in that case pursuant to an Order of this Court dated March 9, 2016, a copy of which is attached hereto as Exhibit A. Subsequent to entry of that Order the Debtor's case was dismissed by the Court upon the motion of the Chapter 13 Trustee. Nothing has changed with respect to the Debtor or his financial condition since the Court granted PENC relief from the stay on March 9, 2016 except that the Debtor is now represented by counsel. The basis for the Court granting PENC relief on March 9, 2016 remains the same except that the amount of unpaid real estate taxes continues to increase as a result of the passage of time further diminishing PENC's interest in the Real Property.

6. This matter has had a long and tortious history. In February of 1987 the Debtor and his wife Susan A. Coletta, (the "Co-Debtor" and collectively with the Debtor, the Colettas") executed a note and mortgage in the original principal amount of $198,000.00. As a

---

[1] As reflected in the Proof of Claim filed simultaneously herewith, PENC is owed in excess of $875,000.00 under the terms of the forbearance agreements between the Debtor and predecessors to PENC.
However as a result of the fact that a discharge was entered in the 2005 Chapter 7 case of the Debtor and his wife, PENC recognizes that its recourse is limited to the Real Property which PENC believes is currently valued in the amount of $650,000.00.

2

result of various defaults under the terms thereof, in 2001 Wells Fargo Bank, the then holder of the note and mortgage instituted a foreclosure action in the Supreme Court which was assigned Index No. 013825/2001. In August of 2004 a Judgment of Foreclosure and Sale was entered in that action. A copy of the Judgment of Foreclosure and Sale is attached hereto as *Exhibit "B"*.

7. Thereafter, in October of 2005, prior to the foreclosure sale of the Real Property, the Colettas filed a joint chapter 7 petition in this Court that was assigned Case No. 05-88753. As a result thereof the foreclosure sale of the Real Property was stayed. Subsequently, as a result of a motion filed by Wells Fargo Bank for relief from the automatic stay, in December of 2007, a predecessor to PENC, Gold Harbor Equities, LLC entered into a forbearance agreement (the "GH Agreement") with the Colettas pursuant to which Gold Harbor agreed to acquire the underlying, note, mortgage and Judgment of Foreclosure and Sale from Wells Fargo Bank and agreed to forbear from proceeding to enforce such Judgment of Foreclosure and Sale for a period of one year to permit the Colettas a period of time to pay-off the outstanding indebtedness due. Pursuant to the GH Agreement, a copy of which is attached hereto as *Exhibit "C"*, in consideration of Gold Harbor's agreement to forbear, the Colettas agreed to pay interest on the amount of the outstanding indebtedness, which at that time was agreed to be in the amount of $387,523.61, at the rate of Thirteen (13%) percent per annum and to make monthly payments of $1,500.00 per month which would be credited against the amount required to pay-off the outstanding indebtedness. The GH Agreement further provided that the entire amount of the outstanding indebtedness plus the accrued interest, less payments received, would be due and payable on or before November 30, 2008 and that in the event of a default by the Colettas under the GH Agreement, the interest rate on the outstanding indebtedness would increase to Eighteen (18%) percent per year and Gold Harbor could proceed to enforce the Judgment of Foreclosure and Sale. Although it appears the

3

Colettas made each of the monthly payments as required by the GH Agreement, the Colettas failed to pay-off the outstanding indebtedness by November 30, 2008 as required thereby and accordingly beginning December 1, 2008, interest started to run on the outstanding indebtedness at the default rate of 18% per annum.

8. Subsequent to November 30, 2008 the Colettas continued to make monthly payments to Gold Harbor at the rate of $1,500.00 per month notwithstanding the fact that the then owner and holder of the Note, Mortgage and Judgment of Foreclosure and Sale, OCFF, LLC, who had acquired the Note, Mortgage and Judgment of Foreclosure and Sale from GNOSIS in April of 2008, could have proceeded to enforce the Judgment of Foreclosure and Sale, continued to forbear therefrom. In April of 2009, notice was provided to the Colettas that the management of the Note and Mortgage had been transferred to the TKM Group, Inc. The Colettas continued to make payments to the TKM Group and OCFF, LLC agreed to continue to forbear from enforcing the Judgment of Foreclosure and Sale, notwithstanding that the GH Agreement had expired. In July of 2009 the Bankruptcy Court entered the Colettas discharge in their 2005 Chapter 7 case.

9. In June of 2010, TKM Group, Inc., on behalf of OCFF, LLC, after discussions with the Colettas, made a proposal to the Colettas to give them another opportunity to payoff the existing obligation and to reduce the then accruing interest rate from the default rate of 18% to a discounted rate and to allow for a reduced payoff during the following 24 month period assuming that the Colettas timely complied with their obligations thereunder. The proposal provided for a monthly payment of $2,475.70 per month beginning in July of 2010 and a reduced interest rate of five (5%) per cent and a fixed payoff during the first 12 months of $461,500.00 and a slighter higher payoff of $471,5000.00 during the next 12 months. The proposal further provided that in the event of a default or the failure to pay-off the obligation by June 1, 2012 the entire

outstanding balance, including accrued interest at the default rate would be due. In consideration therefore, OCFF, LLC would continue to forbear from seeking to enforce the Judgment of Foreclosure and Sale. On or about July 19, 2010 the Colettas executed the agreement (hereinafter the "TKM Agreement") and made the first payment. A copy of the TKM Agreement is attached hereto as *Exhibit "D"*. The Colettas timely made the first three payments under the TKM Agreement until October of 2010 when the Collettas failed to make their monthly payment. Accordingly, the interest rate, which had been accruing at the reduced rate of 5% since July 1, 2010, increased to the default rate of 18%. Although the Colettas started to make payments to TKM again in late November of 2010, and continued to make payments, although not on a monthly basis, until October of 2012, interest continued to accrue at the default rate of 18% since October of 2010. In August of 2011 the Note, Mortgage and Judgment of Foreclosure and Sale was assigned from OCFF, LLC to PENC. A copy of the Assignment of Mortgage that was recorded in the Nassau County Clerk's office is attached hereto as *Exhibit "E"*.

10. Thereafter, as a result of the Colettas failure to satisfy their obligations to PENC, PENC contacted Jonathan A. Moore, Esq., the Referee that had been appointed by the Supreme Court and noticed the foreclosure sale of the Real Property for April 2, 2013. On April 1, 2013 the Colettas filed an Order to Show Cause in the Supreme Court seeking entry of an order (i) canceling the foreclosure sale and dismissing the action based upon an alleged waiver of default and acceleration; (ii) an order pursuant to New York Real Property and Proceedings Law Section 1341 compelling the current holder of the Note, Mortgage and Judgment of Foreclosure and Sale to issue a payoff statement; and/ or fixing the amount necessary to satisfy the holder of the Note, Mortgage and Judgment of Foreclosure and Sale in an amount not to exceed $453,088.87 and (iv) such other and further relief as is just and equitable. The Supreme Court stayed the foreclosure

5

sale pending determination of the Colettas' motion. On August 8, 2013 the Supreme Court issued its Short Form Order denying the relief requested by the Colettas except to the extent that prior to scheduling a new foreclosure sale PENC was required to file an Attorney's Foreclosure Integrity Affirmation and issue a payoff statement. Pursuant to terms of the Short Form Order, PENC issued its payoff letter on September 4, 2013 and the Attorney's Affirmation was filed with the Court on or about October 22, 2013. Thereafter, after consultation with the Referee, Jonathan Moore, Esq., a foreclosure sale of the Premises was scheduled for December 10, 2013.

11. On December 9, 2013, the day before the scheduled foreclosure sale, the Debtor filed a Chapter 13 case in this Court which was assigned Case No. 13-76160. In that case PENC filed a proof of claim and interposed various objections to confirmation of the Debtor's chapter 13 Plan. The Debtor objected to PENC's claim, however, prior to the conclusion of the litigation, on June 30, 2014 upon the Debtor's application, the chapter 13 case was dismissed by an order of the Bankruptcy Court. A copy of that Order is attached hereto as *Exhibit "F"*.

12. As a result of the fact that the Referee who had been appointed to sell the Real Property was no longer able to serve in such capacity, in July of 2014, PENC was forced to seek the appointment of a Successor Referee in the Supreme Court. In connection therewith, the Colettas cross-moved to vacate the Judgment of Foreclosure and Sale and to dismiss the action. In March of 2015 the Supreme Court granted PENC's motion and denied the Colettas' cross-motion. Thereafter PENC rescheduled the foreclosure sale of the Real Property for June 2, 2015. Prior thereto, the Colettas filed an Order to Show Cause in the Supreme Court seeking a stay of the foreclosure sale and seeking to dismiss the action based upon a theory of usury. The Supreme Court granted the Oder to Show Cause staying the foreclosure sale, however pursuant to an Oder entered on October 21, 2015 the Supreme Court denied the Colettas' motion to dismiss the action.

PENC rescheduled the foreclosure sale of the Real Property for December 29, 2015 however, as indicated above, on December 23, 2015 the Debtor filed a Chapter 13 petition pro se. PENC sought and obtained relief from the stay imposed upon the filing of such case and again noticed a foreclosure sale of the property, however PENC was again frustrated in realizing upon its collateral when the Debtor filed the within Chapter 13 case which again stayed the sale of the Real Property.

REQUESTED RELIEF

**The Automatic Stay should be terminated.**

13. PENC is entitled to relief from the automatic stay in order that it can complete the foreclosure sale of the Real Property. Relief from the stay is proper under Bankruptcy Code Section 362(d)(4)(B) as there can be no doubt that the filing of the Chapter 13 case by the Debtor was intended to hinder and delay PENC from finally realizing upon it collateral.

14. Section 362 (d)(4) of the Bankruptcy Code provides in pertinent part:

> **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> **(4)** with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> (B) multiple bankruptcy filings affecting such real property.

15. As delineated above, this is the third bankruptcy case affecting the Real Property since December of 2013 and the second in the last 4 months. Each of the prior two

cases filed by the Debtor as well as this case was filed virtually on the eve of a duly scheduled and advertised foreclosure sale. As such this Court can conclude that the filing of the petition in this case was an act to delay and hinder PENC a judgment creditor of the Debtor. As discussed by Chief Bankruptcy Judge Craig in *In Re: Eric H. Richmond*, 516 B.R. 229 (2014) "Section 362(d)(4) does not require any finding that the Debtor is a serial filer, but rather that "the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved ... multiple bankruptcy filings affecting such real property." ... A bankruptcy court can "infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone *In re Procel*, 467 B.R. 297, 308 (S.D.N.Y.2012) (quoting *In re Blair*, No. 09-76150, 2009 WL 5203738, at *4-5 (Bankr. E.D.N.Y. Dec. 21, 2009). As Judge Craig found in that case, the timing of each of the filings affecting the Real Property were such that in each instance PENC was prevented from conducting the foreclosure sale. As such this Court can, like Judge Craig did in *In Re Richmond*, infer that the filings were made with the requite intent to hinder and delay PENC from completing the foreclosure. Furthermore, in each of the prior two cases, the Debtor never confirmed a Chapter 13 plan and the Colettas collectively do not have sufficient excess income to satisfy PENC's claim within the term of a 60 month plan.

16. In addition to being entitled to relief under Section 362 (d)(4) PENC is also entitled to relief pursuant to Bankruptcy Code Section 362 (d)(1). That section provides in pertinent part that the Court shall grant relief from the automatic stay imposed by section 362(a) "for cause including the lack of adequate protection of an interest in property...". PENC asserts that sufficient "cause" exists to vacate the automatic stay in that no payment has been made to PENC with respect to its interest in the Real Property since October of 2012, more than three and one half years ago and based upon the Debtor's own valuation there is no equity in the Real

Property. Furthermore, neither the Debtor nor the Co-Debtor have paid the real estate taxes in respect to the Real Property since some time in 2012. As a result, as of May 4, 2016 there was due and owing to Nassau County in excess of $39,643.00 which has continued to accrue interest at the rate of 10% and additional taxes due to the Village of Rockville Centre in excess of $3,300.00. Since those taxes have priority over PENC's interest in the Real Property, PENC's interest in the Real Property is further prejudiced on a daily basis by the Debtor's failure to pay such obligations.

17. In addition to granting PENC relief under Bankruptcy Code Section 362(d)(1), the Court may grant relief under Bankruptcy Code Section 362(d)(2) which provides that the Court shall grant relief from the automatic stay imposed by section 362(a) (2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

As indicated in the Debtor's Schedules, the relevant portions of which are attached hereto as *Exhibit "G"*, the Debtor values the Real Property in the amount of $600,000.00. As delineated in the Eastern District Worksheet, attached hereto as *Exhibit "H"*, as of the date the Debtor filed his chapter 13 petition, PENC was owed in excess of $865,000.00. In addition, there are outstanding real estate taxes on the Real Property which are superior to PENC's lien in the amount of not less than $39,000.00. Based thereon, it is clear that the Debtor has no equity in the Real Property. Nor is the Real Property necessary for an effective reorganization. As of the date of this motion, the Chapter 13 plan filed by the Debtor is not confirmable. With respect to secured claims, Section 1325(a)(5) provides that each secured creditor has accepted the plan or that the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is

not less than the allowed amount of such claim. In this case PENC has not accepted the Plan, and the Plan, a copy of which is attached hereto as *Exhibit "I"*, fails to comply with the provisions of Section 1325 (a)(5)(B)(ii) of the Bankruptcy Code since it proposes to pay to PENC all of the arrears over the life of the plan or pursuant to a modification to be agreed to by the parties. The Debtor does not have enough excess income to pay the pre-petition real estate taxes and to pay to PENC the value of the Real Property within such 60 month period. Accordingly, no reorganization is possible.

**The Co-Debtor Stay should be terminated.**

18. In addition to the automatic stay imposed pursuant to Bankruptcy Code Section 362 with respect to the Debtor, pursuant to Bankruptcy Code Section 1301 a co-debtor stay also came into effect upon the filing of the Debtor's Chapter 13 petition which prohibits PENC from completing the foreclosure sale. Bankruptcy Code Section 1301 provides in pertinent part:

> **(a)** Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless— …
>
> **(2)** the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.
>
> **(c)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that— …
>
> **(2)** the plan filed by the debtor proposes not to pay such claim; or
>
> **(3)** such creditor's interest would be irreparably harmed by continuation of such stay.

19. PENC is entitled to relief from the co-debtor stay under both Bankruptcy Code Sections 1301(c)(2) and (c)(3). As set forth above, the Debtor's Chapter 13 Plan does not satisfy the requirements of Bankruptcy Code Section 1301(c)(2) because it does not contain a

specific provision for the full payment of PENC's claim. Rather, it provides that the Debtor will pay to PENC all of the arrears over the life of the plan or pursuant to a modification to be agreed to by the parties. However, the Debtor does not have sufficient income to pay such amounts within the sixty (60) month term of the Plan since it would require in excess of $10,000 per month to be paid to PENC.

20.     Furthermore, PENC's interest would be irreparably harmed by the continuation of the co-debtor stay. Neither the Debtor nor the Co-Debtor has paid the taxes with respect to the Property since 2012. As a result there are substantial tax liens against the Property which prime PENC's interest in the Property and continue to accrue interest at the rate of 10% per year. The accrual of such interest and the continued failure of the Colettas to pay the taxes irreparably impacts PENC since the value of the Property has not increased at the same rate as the combination of the additional taxes and the interest on the unpaid taxes which continues to negatively affect PENC since PENC's only recourse is to the Property. Accordingly, PENC is entitled to relief from the co-debtor stay pursuant to Bankruptcy Code Section 1301(c)(3).

21.     No prior application for the relief requested herein has been made before this or any other Court except to the extent requested in the original version of the motion previously filed herein.

19.     A copy of the proposed Order granting PENC the relief requested is submitted herewith as *Exhibit "J"*.

**WHEREFORE,** based on the foregoing and pursuant to 11 U.S.C. §362(d)(4), (d)(1) and (d)(2), PENC respectfully requests that this Court ender an Order terminating, annulling or modifying the automatic stay under §362(a) to the extent necessary to permit PENC to enforce its rights and remedies, including foreclosure of the Real Property, to grant it relief from the co-debtor

stay imposed pursuant to 11 U.S.C. §1301(a) and for such other and further relief as is just and proper under the circumstances.

Dated: Hempstead, New York
       June 8 2016

Lawrence and Walsh, P.C.

By:   */s/ Eric P. Wainer*
      Eric P. Wainer (EPW 9783)

Attorneys for PE-NC, LLC
215 Hilton Avenue
Hempstead, New York 11550
(516) 538-2400 tel.
(516) 538-2079 fax